■ The People of the State of New York, Respondent-Appellant, v Angel Torres, Appellant-Respondent.—Judgment of the Supreme Court, Bronx County (Jerome Hornblass, J.), rendered on July 18, 1984, convicting defendant, following a jury trial, of criminal sale of a controlled substance in the

third degree and sentencing him to an indeterminate term of incarceration of from 2⅓ to 7 years, is reversed, on the law, and the matter remanded for a new trial, and the cross appeal is dismissed as moot.

Defendant was arrested pursuant to an undercover "buy" operation after he allegedly sold two glassine envelopes of heroin to a police officer. During the ensuing trial held in connection with this matter, defendant stated that on the day in question, he and his young son had been present in the park near Morrison and Westchester Avenues in The Bronx. although he was aware that drug dealing took place in the area, and he admitted being dressed in the manner described by the police, he claimed not to have engaged in any narcotics transactions. According to defendant, he and his son were simply sitting on a bench in the crowded park when a police officer suddenly handcuffed him, searched him and then released him. Shortly thereafter, he was arrested. Defendant denied selling narcotics to the undercover officer or to anyone else. Since defendant did not possess either drugs or buy money at the time of his arrest, the only evidence connecting him with the crime charged was the testimony of the undercover officer. Thus, the crucial issue herein concerned the credibility of the respective witnesses.

The jury, as the arbiter of credibility *(People v Williams,* 6 NY2d 18; *People v Hicks,* 102 AD2d 173), could appropriately accept the version of events offered by the prosecution and reject that of defendant. However, the District Attorney's cross-examination of defendant regarding his participation in a drug treatment program, in conjunction with the court's instructions to the jury, deprived defendant of his right to a fair trial. While it is true that a defendant who chooses "to testify on his own behalf may be cross-examined with respect to immoral, vicious or criminal acts which have a bearing on his credibility, such questioning is impermissible when its purpose is to show a propensity to commit the offense for which the defendant is being tried." *(People v Hicks, supra,* at p 183; *see also, People v Wright,* 41 NY2d 172.) The effect of the prosecutor's inquiry into whether defendant in the instant case was undergoing drug treatment, and the nature of that treatment (methadone maintenance), could only be to create in the jurors' minds a connection between his previous addiction and the current charges against him. Moreover, by exploiting the widely held assumption that an individual who has been involved with drugs in the past is likely to be a habitual offender, the District Attorney was also in violation

of the provisions of Mental Hygiene Law § 23.05 (a), which prohibits the introduction of a patient's participation in a substance abuse program against such person in any action or proceeding in any court. *(People v Dowdell,* 88 AD2d 239.)

The highly prejudicial impact of this largely irrelevant evidence was not overcome by defendant's testimony, on redirect, that he had attended that program for nearly three years, that a weekly urine test was administered to him and that he had abstained from the use of illegal drugs for the last 2½ years. Nor was the prejudice attenuated by the court's instruction to the jury that defendant's enrollment in the methadone maintenance program was voluntary and not the result of any mandatory directive or court order. On the contrary, the court's instruction served to emphasize the fact that defendant was a prior drug user and, indeed, the court specifically informed the jury that the program was only available to those who had abused drugs.

The People contend that defendant, by not objecting to the prosecutor's line of inquiry and moving for a mistrial only after his redirect examination, has waived this claim as a matter of law. In that regard, defense counsel, in moving for a mistrial, explained that her failure to object was due to a concern that the jury might infer from the District Attorney's question and the subsequent objection that defendant was still a drug user. The court acknowledged that many persons hold the belief that someone enrolled in a drug treatment program is involved with drugs but noted that the evidence was probative of defendant's credibility and his knowledge of drugs. When the court offered to advise the jury about the limited value of this proof, defendant's attorney argued that the improper inference would not be erased. She protested that:

"I certainly do not want any curative instruction that mentions drug culture, member of the drug culture, history of addiction, drug addiction. I don't want that at all. Under absolutely no circumstances.

"My client is not a member of any drug culture. He is not a drug addict. He is enrolled in a methadone treatment program."

Yet, notwithstanding defense counsel's request, the court delivered the disputed instruction, and defendant's lawyer immediately moved for a mistrial on the ground that the instruction unfairly characterized defendant as an addict. The motion was denied. The record, therefore, clearly indicates that defendant's lawyer was disturbed by the prosecution's

attempt to inject into the proceedings defendant's past history of drug abuse and his participation in a methadone maintenance program, and she endeavored to minimize the prejudicial effect of the District Attorney's action. Defendant was, after all, on trial for drug-related charges. The evidence against him was far from overwhelming and depended almost entirely upon the undercover officer's account. Defendant was not arrested immediately after the narcotics buy but was picked up sometime later, in the company of his son, apparently because he was a male Hispanic of medium height and weight who was dressed in blue jeans and a red shirt and thus matched the general description given of the man from whom the undercover officer had purchased the heroin. Defendant, on the other hand, insisted that he was not the person who made the sale. Under these circumstances, any reference to defendant's previous drug addiction could only be extremely prejudicial and serve to undermine his contention that the police had arrested the wrong person.

In view of the highly damaging nature of the prosecution's cross-examination and the ensuing instruction to the jury, defendant is entitled to a reversal of his conviction and a new trial. It should be noted that we reject the People's argument that defendant, by disclosing his participation in a drug dependency program to an interviewer from the Criminal Justice Agency, waived his right to privacy and gave the prosecutor a good-faith basis for the inquiry. The fact that defendant elected to respond truthfully to the interviewer cannot be deemed a knowing waiver on his part of his right to a fair trial such as would enable the District Attorney to ignore both the rules of evidence and the mandate of Mental Hygiene Law § 23.05. Since this matter is being remanded for a new trial, it is unnecessary to consider the People's claim that defendant should have been sentenced as a second felony offender. Concur—Murphy, P. J., Kupferman, Ross, Milonas and Ellerin, JJ.